NOT DESIGNATED FOR PUBLICATION

No. 122,756

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN L. JONES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed June 11, 2021. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM:  Ryan L. Jones pled guilty to possession of drug paraphernalia with intent to distribute or manufacture drugs. Before sentencing, Jones challenged his criminal history and argued his prior juvenile adjudications for burglary and misdemeanor theft should decay and not be scored. The district court denied relief and found Jones' juvenile adjudications were precluded from decay because Jones did not meet the requirements under the decay statute, K.S.A. 2017 Supp. 21-6810(d)(5). On appeal, Jones contends the district court erred in interpreting the statute and argues statutory construction is required to determine legislative intent. However, we find the

1

district court did not err in interpreting the statute because it is plain and unambiguous, and Jones does not meet one of the three requirements that would permit decay of his juvenile adjudications.

FACTS

As part of a plea agreement with the State, Jones pled guilty to the charge of possession of drug paraphernalia with the intent to distribute or manufacture drugs, a severity level 5 drug felony. That crime was committed on July 15, 2017. In addition to the agreement recommending the high number in the appropriate guidelines grid box for sentencing, the parties also agreed to recommend the court "follow the presumption, which is believed to be probation."

Jones' presentence investigation report indicated he had a criminal history score of D. The report showed four prior items on the criminal history worksheet, two of which were adult convictions and two of which were juvenile adjudications:

- June 20, 2012:  burglary adjudication, coded as a juvenile person felony.
- June 20, 2012:  theft adjudication, coded as a juvenile nonperson misdemeanor.
- September 18, 2015:  no proof of insurance conviction, coded as an unscored adult misdemeanor.
- September 18, 2015:  illegal tag conviction, coded as an unscored adult misdemeanor.

Before sentencing, Jones challenged the use and scoring of the juvenile adjudications on the worksheet, arguing they should be allowed to decay under K.S.A. 2017 Supp. 21-6810(d)(5), which would permit the juvenile adjudications to decay if three requirements are met. Jones argued the unscored 2015 convictions for driving with

2

no insurance and an illegal tag should not count as convictions barring decay under K.S.A. 2017 Supp. 21-6810(d)(5).

In response, the State argued Jones did not meet the requirements for decay because he acquired new convictions within five years of his juvenile adjudications, regardless of whether the new offenses could be scored as part of his criminal history.

The district court heard arguments on the challenge at sentencing and ultimately denied Jones' motion challenging his criminal history because it found Jones did not meet the requirements for decay under K.S.A. 2017 Supp. 21-6810(d)(5)(B). The district court found the statute was unambiguous and required that all three of the conditions had to be satisfied.

Upon finding Jones' criminal history score was D, the district court sentenced Jones to 26 months' imprisonment. The district court also granted Jones' motion for border box findings and placed him on probation.

Jones has timely appealed from the district court's decision overruling the challenge to his criminal history.

ANALYSIS

In his appeal, Jones contends the only disputed question is whether his 2015 convictions for driving with no proof of insurance and an illegal tag are "convictions" for purposes of preventing the decay of prior juvenile adjudications. Jones contends that his 2015 convictions "are not the type of 'new conviction' the legislature intended to preclude prior adjudications from decaying" when calculating criminal history. As a result, Jones believes the district court erred in calculating his criminal history score. In response, the

State argues the district court properly scored Jones' criminal history because the statute prohibited decay of his juvenile adjudications.

Resolution of this issue requires statutory interpretation, which presents a question of law over which we have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). Thus our first task must be to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

When a statute is plain and unambiguous, we cannot speculate about the legislative intent behind that clear language, and we must refrain from reading something into the statute that is not readily found in its words. 309 Kan. at 164. Where there is no ambiguity, we need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous do we use canons of construction or legislative history to construe the Legislature's intent. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

> "'To the extent we are called upon to interpret the statute, we first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of

4

the canons that support such construction.'" *Ayers*, 309 Kan. at 163-64 (quoting *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 [2006]).

The statute at issue here is K.S.A. 2017 Supp. 21-6810(d)(5), which dictates the rules for inclusion or exclusion of juvenile adjudications as part of the criminal history worksheet in an adult felony presentence investigation report:

"A juvenile adjudication will not be considered and scored if:
      "(A) The current crime of conviction is committed at least five years after the date of the prior adjudication;
      "(B) the offender has *no new adjudications or convictions during such five-year period*; and
      "(C) the juvenile adjudication is for an offense that would be a nondrug severity level 5 through 10 felony, drug felony, nongrid felony or misdemeanor, if committed by an adult." (Emphasis added.)

Jones argues the italicized language of subsection (B) is unclear and ambiguous and asks us to ponder: "Did the legislature mean any conviction of any sort, including traffic infractions, or did it mean any *scorable* convictions for criminal history purposes?" At the outset we note that this query is based on a false premise, because Jones' convictions for driving with no insurance and driving with an illegal tag are misdemeanors, not traffic infractions.

Believing the statute to be ambiguous, Jones employs the canons of statutory construction to argue the district court erred in interpreting the statute—and calculating his criminal history—because the district court's holding leads to "an absurd result that the legislature almost certainly did not intend." Jones concedes that "[w]hile read on its own, devoid of any context, the plain meaning of the term 'new adjudication or conviction,' might have the plain meaning of ***any*** conviction, no matter how minor." Even so, he argues the statute is not plain and unambiguous because this interpretation "ignores

the location of the terms within the whole act" and "would lead to absurd results." Conversely, the State argues the language of the statute is plain and unambiguous. The State contends a plain reading of the statute "does not lead to unreasonable results" because "[p]eople are expected to follow the law."

Jones concedes that words should be understood in their ordinary meaning, but contends the issue here is different because the phrase "no new adjudication or conviction" has a "technical meaning." See K.S.A. 77-201 ("Words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a particular and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings."). Based on Jones' belief that the statute has words of technical meaning, he argues the ordinary meaning should not control, but rather K.S.A. 2017 Supp. 21-6810(a) should define which prior convictions the Legislature intended to score.

The statute which establishes the scoring rules for criminal history, K.S.A. 2017 Supp. 21-6810(a), states:

"Criminal history categories contained in the sentencing guidelines grids are based on the following types of prior convictions:  Person felony adult convictions, nonperson felony adult convictions, person felony juvenile adjudications, nonperson felony juvenile adjudications, person misdemeanor adult convictions, nonperson class A misdemeanor adult convictions, person misdemeanor juvenile adjudications, nonperson class A misdemeanor juvenile adjudications, select class B nonperson misdemeanor adult convictions, select class B nonperson misdemeanor juvenile adjudications and convictions and adjudications for violations of municipal ordinances or county resolutions which are comparable to any crime classified under the state law of Kansas as a person misdemeanor, select nonperson class B misdemeanor or nonperson class A misdemeanor. A prior conviction is any conviction, other than another count in the current case, which was brought in the same information or complaint or which was joined for trial with other counts in the current case pursuant to K.S.A. 22-3203, and

6

amendments thereto, which occurred prior to sentencing in the current case, regardless of whether the offense that led to the prior conviction occurred before or after the current offense or the conviction in the current case."

Jones contends the Legislature intended for subsection (a) to define which types of adjudications and convictions would prevent a juvenile adjudication from decaying under K.S.A. 2017 Supp. 21-6810(d)(5)(B). He argues this technical definition of the phrase should control over the general definition of "conviction" contained in the criminal code. See K.S.A. 2017 Supp. 21-5111(d) (defining "'[c]onviction'" as including "a judgment of guilty entered upon a plea of guilty").

Based on these definitions, it appears to us that Jones is arguing his 2015 convictions for driving with no insurance and an illegal tag should not prevent decay of his earlier juvenile adjudications simply because they are not scorable under K.S.A. 2017 Supp. 21-6810(a) and thus cannot be considered in determining his criminal history.

Jones' argument is not persuasive to us because he did not establish a nexus linking the definition in subsection (a) of the felony criminal history scoring protocol and the phrase at issue in subsection (d)(5) of the juvenile offense decay rules. Under subsection (a), the Legislature delineated which types of prior adult convictions are to be used to determine an offender's criminal history category. Conversely, under subsection (d)(5), the Legislature delineated which juvenile adjudications would not be considered and scored. Put a different way, subsection (a) delineates which prior adult convictions and juvenile adjudications must be included in establishing criminal history, whereas subsection (d)(5) overrides that and permits the exclusion of certain prior juvenile adjudications that would otherwise be included in calculating the appropriate category. But to be excluded, or decayed, to use the term of art under the exclusion statute, the prior juvenile adjudications must pass the three-pronged test under subsection (d)(5); otherwise they are automatically included in criminal history scoring by operation of law.

7

Thus, we believe Jones' interpretation and construction of K.S.A. 2017 Supp. 21-6810 attempts to create ambiguity in a plainly unambiguous statute. As the State argues, Jones' interpretation reads something into the statute that is not readily found in its words. Jones argues we should construe the statute so that it effectively reads that an offender may have "'no new *scorable* adjudications or convictions'" within five years for a juvenile offense to decay. (Emphasis added.) But by giving common words their ordinary meanings, Jones' contention is without merit.

When used as an adjective, the word "no" is defined as "not any; not a; not one." Webster's New World College Dictionary 991 (5th ed. 2014). As mentioned, the criminal code defines conviction as including "a judgment of guilty entered upon a plea of guilty." K.S.A. 2017 Supp. 21-5111(d). Similarly, Webster's New World College Dictionary defines the noun "conviction" as "a convicting or being convicted," and the transitive verb "convict" as "to prove (a person) guilty." Webster's New World Dictionary 326 (5th ed. 2014). The noun "adjudication" is a reflection of the language in the revised Kansas Juvenile Justice Code. See K.S.A. 2020 Supp. 38-2356(b) ("If the court finds that the juvenile committed the offense charged or a lesser included offense . . . the court shall adjudicate the juvenile to be a juvenile offender and may issue a sentence as authorized by this code.").

Giving effect to the express words of the statute, the Legislature's use of the words "no new" shows it only intended to allow decay if the defendant had "not any; not a; not one" new conviction or adjudication in the five years since the previous juvenile adjudications. Moreover, the use of the words "adjudication" and "conviction" show the Legislature intended to include *any* offenses—juvenile or adult and regardless of severity—as preclusions to decay.

We hold that prior convictions cannot decay under K.S.A. 2017 Supp. 21-6810(d)(5)(B) if the defendant has any adjudication or conviction within five years from

8

the prior juvenile adjudication. Nothing in the statute indicates the Legislature intended that only certain adjudications or convictions would qualify for exclusion under the language "no new adjudications or convictions during such five-year period." K.S.A. 2017 Supp. 21-6810(d)(5)(B). Jones' interpretation does not give the statute "effect as written," but rather requires us to speculate as to the legislative intent by reading the language "so as to add something not readily found in the statute." *Ayers*, 309 Kan. at 164.

Because the district court did not err in interpreting the statute, the district court correctly found Jones did not meet the requirements for decay of his prior juvenile adjudications under K.S.A. 2017 Supp. 21-6810(d)(5). Jones' 2015 misdemeanor convictions, while not scorable in criminal history on their own, do preclude decay of his earlier juvenile adjudications under subsection (d)(5)(B) because those misdemeanors were committed within the five years after the date of the prior juvenile adjudications. As a result, the district court did not err in calculating Jones' criminal history.

Affirmed.